IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| STATE FARM FIRE & CASUALTY, an Illinois Corporation, | ) ) ) ) | CV. NO.  09-00541 DAE-BMK |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| PETER JOSEPH ELSENBACH, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) ) | |
| PETER JOSEPH ELSENBACH, | ) ) | |
| Counterclaimant | ) ) | |
| vs. | ) ) | |
| STATE FARM FIRE & CASUALTY, an Illinois Corporation, | ) ) ) ) | |
| Counterdefendant. | ) ) | |
| _____ | ) | |

ORDER: (1) GRANTING STATE FARM'S MOTION FOR
SUMMARY JUDGMENT; (2) DENYING MR. ELSENBACH'S
COUNTER MOTION FOR SUMMARY JUDGMENT

On June 13, 2011, the Court heard State Farm's Motion for Summary

Judgment and Mr. Elsenbach's Counter Motion for Summary Judgment.  Richard

B. Miller, Esq., appeared at the hearing on behalf of Plaintiff State Farm Fire &

Casualty Co. ("State Farm"); Alan Van Etten, Esq., appeared at the hearing on

behalf of Defendant Peter Joseph Elsenbach ("Mr. Elsenbach").  After reviewing

the motions and the supporting and opposing memoranda, the Court GRANTS

State Farm's Motion for Summary Judgment (Doc. # 24) and DENIES Mr.

Elsenbach's Counter Motion for Summary Judgment (Doc. # 31).

<u>BACKGROUND</u>

This is an insurance coverage action, brought to determine the rights

and obligations of Plaintiff State Farm Fire & Casualty Co. ("State Farm") and

Defendant Peter Joseph Elsenbach ("Mr. Elsenbach") with regard to a lawsuit

currently pending in the Circuit Court of the Third Circuit, State of Hawaii.  The

Court repeats the background facts only as is necessary for a decision on the

Motion for Summary Judgment and the Counter Motion for Summary Judgment.

The essential facts of this case are not in dispute.

I.      <u>The Underlying Lawsuit</u>

On May 26, 2009, Ronda Lee Ramos Elsenbach ("Ms. Elsenbach")

filed a lawsuit in Hawaii state court against Mr. Elsenbach, Ronald Beverly

("Beverly"), and various Doe Defendants, captioned <u>Ronda Lee Ramos Elsenbach</u>

<u>v. Peter Joseph Elsenbach et al.</u>, Circuit Court of the Third Circuit, State of Hawaii, Civil No. 09-1-0199K (the "Underlying Lawsuit").  (Pl.'s CSOF Ex. 1.)

According to the Underlying Complaint, Mr. Elsenbach and Ms. Elsenbach were married on November 9, 2001 in the State of Hawaii, after living together for approximately nine years.  (<u>Id.</u> ¶¶ 5–6.)  Although they first resided together in the State of Oregon, Mr. and Ms. Elsenbach moved to Hawaii a few years later.  (<u>Id.</u> ¶ 6.)  Ms. Elsenbach asserts that, after they moved to Hawaii, Mr. Elsenbach "began to harass, and verbally and physically abuse [her]."  (<u>Id.</u> ¶ 7.)  According to Ms. Elsenbach, this "harassment and abuse continued to escalate over the next few years until it culminated in [Mr.] Elsenbach's viscous assault and battery on [Ms. Elsenbach] on May 28, 2007."  (<u>Id.</u> ¶ 8.)  Mr. Elsenbach filed for divorce on June 7, 2007.  (<u>Id.</u> ¶ 9; Countercl. ¶ 10.)

In her complaint, Ms. Elsenbach asserts that Mr. Elsenbach attempted to kill her; assaulted and battered her; and knowingly, intentionally, recklessly, and/or negligently inflicted severe emotional distress upon her "by grabbing her jaws and head, and violently twisting her head and neck" during the May 28, 2007 incident.  (Pl.'s CSOF Ex. 1 ¶¶ 12–14.)  Ms. Elsenbach also contends that from May 28, 2007 to the present, Mr. Elsenbach and Beverly conspired to, and did in fact, harass, stalk, threaten, terrorize, and intimidate Ms. Elsenbach as well as her

witnesses in the divorce case.  (Id. ¶¶ 15–18.)  Finally, Ms. Elsenbach contends

that, from May 29, 2007 to January 2008, Mr. Elsenbach and Beverly trespassed

and burglarized Ms. Elsenbach's residence in Kona, Hawaii, and that on March 30,

2009, Mr. Elsenbach and Beverly attempted to kill Ms. Elsenbach by running her

car off the road while she was driving.  (Id. ¶¶ 19, 21.)  Ms. Elsenbach seeks

general, special, and punitive damages as well as a permanent injunction enjoining

Mr. Elsenbach and Beverly from further harassing and intimidating her and her

witnesses.  (Id. at 4–5.)

        Mr. Elsenbach tendered defense of these claims against him to State

Farm.  (Compl. ¶ 26.)  State Farm is participating in the defense subject to a

reservation of rights while it pursues the instant action for declaratory relief.

(Countercl. ¶ 14.)

II.    The Policies

        There are three policies at issue in this litigation (collectively, the

"Policies"), which together, provide continuous insurance coverage for Mr.

Elsenbach's residence, located at 77-6446 Kilohana Street, Kailua-Kona, Hawaii,

96740 (the "Elsenbach Residence").

A.    <u>The First Homeowners Policy</u>

State Farm issued a Homeowners Policy to Mr. and Ms. Elsenbach, Policy Number 51-BK-0129-9, which was in effect from July 29, 2003 to August 28, 2007. ("First Homeowners Policy," Pl.'s CSOF Ex. 2.)  This policy insured the Elsenbach Residence and includes the following relevant provisions:

**DEFINITIONS**

"You" and "your" mean the "named insured" shown in the **Declarations**.  Your spouse is included if a resident of your household.  "We," "us" and "our" mean the Company shown in the **Declarations**.

Certain words and phrases are defined as follows:

1.    "**bodily injury**" means physical injury, sickness or disease to a person.  This includes required care, loss of services and death resulting therefrom.

   **Bodily injury** does not include:

   . . . .

   c.    emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.

. . . .

4.    "**insured**" means you and, if residents of your household:

   a.    your relatives; and

      b.      any other person under the age of 21 who is in the care of a person described above.

. . . .

7.      "**occurrence**," when used in Section II of this policy, means an accident, including exposure to conditions, which results in:

      a.      **bodily injury**; or

      b.      **property damage**;

      during the policy period.  Repeated or continuous exposure to the same general conditions is considered to be one **occurrence**.

8.      "**property damage**" means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by any **insured** is not **property damage**.

. . . .

## SECTION II - LIABILITY COVERAGES

## COVERAGE L - PERSONAL LIABILITY

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:

1.      pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2.      provide a defense at our expense by counsel of our choice.  We may make any investigation and settle any claim or suit that we decide is appropriate.  Our obligation to defend any claim or

suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence** equals our limit of liability.

. . . .

## SECTION II - EXCLUSIONS

1.    Coverage L and Coverage M do not apply to:

    a.    **bodily injury** or **property damage**:

        (1)    which is either expected or intended by the **insured**; or

        (2)    which is the result of willful and malicious acts of the **insured**[.]

    . . . .

    h.    **bodily injury** to you or any **insured** within the meaning of part a. or b. of the definition of **insured**.

        This exclusion also applies to any claim made or suit brought against you or any **insured** to share damages with or repay someone else who may be obligated to pay damages because of the **bodily injury** sustained by you or any **insured** within the meaning of part a. or b. of the definition of **insured**[.]

. . . .

(First Homeowners Policy at 1–2, 15, 16–17.)

B.    <u>The Rental Dwelling Policy</u>

State Farm next issued a Rental Dwelling Policy to Mr. Elsenbach, Policy Number 91-B1-2882-5, which was in effect from August 28, 2007 to April 7, 2008 ("Rental Dwelling Policy," Pl.'s CSOF Ex. 3) and replaced the First Homeowners Policy.[1]  The Rental Dwelling Policy also insured the Elsenbach Residence and includes the following relevant provisions:

**DEFINITIONS**

"You" and "your" mean the "named insured" shown in the **Declarations**.  Your spouse is included if a resident of your household.  "We," "us" and "our" mean the Company shown in the **Declarations**.

Certain words and phrases are defined as follows:

1.    "**bodily injury**" means bodily harm, sickness or disease.  This includes required care, loss of services and death resulting therefrom. . . .

. . . .

4.    "**insured**" means:

a.    if the **named insured** is designated in the **Declarations** as an individual and is a sole proprietor, the **named insured** and spouse[.]

---

[1] Mr. Elsenbach apparently moved out of the Elsenbach Residence on June 28, 2007, and he obtained the Rental Dwelling Policy to insure the residence while Ms. Elsenbach continued to reside there.  (Compl. ¶¶ 19–20, 23.)

. . . .

5.    "**insured premises**" means:

    a.    the **residence premises**[.]

    . . . .

. . . .

8.    "**occurrence**", when used in Section II of this policy, means an accident, including exposure to conditions, which results in:

    a.    **bodily injury**;

    b.    **property damage**; or

    c.    **personal injury**;

during the policy period.  Repeated or continuous exposure to the same general conditions is considered to be one **occurrence**.

9.    "**personal injury**" means injury arising out of one or more of the following offenses:

    a.    false arrest, detention or imprisonment or malicious prosecution;

    b.    libel, slander or defamation of character; or

    c.    invasion of privacy, wrongful eviction or wrongful entry.

10.   "**property damage**" means physical damage to or destruction of tangible property, including loss of use of this property.

Theft or conversion of property by any **insured** is not considered to be **property damage**.

11. "**residence premises**" means the one or two family dwelling, other structures, and grounds which is shown in the **Declarations**.

## SECTION II - LIABILITY COVERAGES

## COVERAGE L - BUSINESS LIABILITY

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury**, **personal injury**, or **property damage** to which this coverage applies, caused by an **occurrence**, and which arises from the ownership, maintenance, or use of the **insured premises**, we will:

1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence**, equals our limit of liability.

. . . .

## SECTION II - EXCLUSIONS

1. **Coverage L - Business Liability** and **Coverage M - Premises Medical Payments** do not apply to:

    a. **bodily injury**, **personal injury**, or **property damage**:

(1)    which is either expected or intended by an **insured**; or

(2)    to any person or property which is the result of willful and malicious acts of an **insured**[.]

. . . .

k.    **bodily injury** to you or any **insured** and if residents of your household:

(1)    your relatives;

(2)    any other person under the age of 21 who is in the care of an **insured**.

. . . .

(Rental Dwelling Policy at 1–2, 9, 10–12.)

C.    <u>The Second Homeowners Policy</u>

State Farm subsequently issued a new Homeowners Policy to Mr. Elsenbach, Policy Number 51-BA-F804-5, which was effective April 7, 2008 ("Second Homeowners Policy," Pl.'s CSOF Ex. 4) and replaced the Rental Dwelling Policy.[2]  The parties assert that the relevant provisions of the First and Second Homeowners Policies are identical.  (Compl. ¶ 25; Countercl. ¶ 18.)

---

[2] Mr. Elsenbach purportedly obtained the Second Homeowners Policy after Ms. Elsenbach vacated the Elsenbach Residence and Mr. Elsenbach moved back into the Elsenbach Residence.  (Compl. ¶¶ 23–24.)

III.    Procedural History

On November 12, 2009, State Farm filed a Complaint in this Court, seeking "a binding declaration that State Farm has no duty to defend or indemnify Mr. Elsenbach [under the Policies] for the claims asserted against him in the Underlying Lawsuit or for any claims that may arise out of the subject matter of the Underlying Lawsuit."  ("Compl.," Doc. # 1.)  On December 22, 2009, Mr. Elsenbach filed a Counterclaim, requesting a declaration that State Farm has a duty to defend and indemnify him, under one or more of the Policies, for the claims asserted in the Underlying Lawsuit.  ("Countercl.," Doc. # 7.)

On November 3, 2010, State Farm filed a Motion for Summary Judgment as to both its Complaint and Mr. Elsenbach's Counterclaim.  ("Pl.'s MSJ," Doc. # 24.)  State Farm filed a Concise Statement of Facts in support of its motion on the same day.  ("Pl.'s CSOF," Doc. # 25).  On April 25, 2011, Mr. Elsenbach filed a Counter Motion for Summary Judgment as to its Counterclaim ("Def.'s CMSJ," Doc. # 31) and a Concise Statement of Facts in support of its motion ("Def.'s CSOF," Doc. # 32).  On May 16, 2011, State Farm filed a Combined Reply in Support of its Motion for Summary Judgment and Opposition to Mr. Elsenbach's Counter Motion for Summary Judgment.  ("Pl.'s Reply," Doc. # 34.)  Mr. Elsenbach filed a Reply on May 23, 2011.  ("Def.'s Reply," Doc. # 35.)

<u>STANDARD OF REVIEW</u>

Rule 56 requires summary judgment to be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>see also</u> <u>Porter v. Cal. Dep't of Corr.</u>, 419 F.3d 885, 891 (9th Cir. 2005); <u>Addisu v. Fred Meyer, Inc.</u>, 198 F.3d 1130, 1134 (9th Cir. 2000). A main purpose of summary judgment is to dispose of factually unsupported claims and defenses. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323–24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. <u>See</u> <u>id.</u> at 323. Before granting summary judgment, however, a non-moving party must have a "'full and fair opportunity to ventilate the issues [related to] the . . . claims.'" <u>Norse v. City of Santa Cruz</u>, 629 F.3d 966, 972–73 (9th Cir. 2010) (quoting <u>Greene v. Solano Cnty. Jail</u>, 513 F.3d 982, 990 (9th Cir. 2008)).

A moving party without the ultimate burden of persuasion at trial—usually, but not always, the defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. <u>Nissan Fire & Marine Ins. Co. v. Fritz Cos.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden initially falls upon the moving party to identify for the

court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323). This assertion must be supported by citations "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials," or by demonstrating "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings. Porter, 419 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers. S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of

the parties."). "[A]t least some 'significant probative evidence'" must be produced. T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." Addisu, 198 F.3d at 1134. Further, the Ninth Circuit has "refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony." Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (citing Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996)). "Conclusory allegations unsupported by factual data cannot defeat summary judgment." Rivera v. Nat'l R.R. Passenger Corp., 331 F.3d 1074, 1078 (9th Cir. 2003). If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, a court may either give the party an opportunity to support or address the fact, consider the fact undisputed for purposes of the motion and grant or deny summary judgment accordingly, or issue any other appropriate order. Fed. R. Civ. P. 56(e).

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." T.W. Elec. Serv., 809 F.2d at 631. In other words, evidence

and inferences must be construed in the light most favorable to the nonmoving party.  Porter, 419 F.3d at 891.  The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage.  Id.; see also Nelson v. City of Davis, 571 F.3d 924 (9th Cir. 2009) ("[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.") (citations omitted).  However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party.  T.W. Elec. Serv., 809 F.2d at 631.

## DISCUSSION

For the reasons set forth below, the Court concludes that State Farm is entitled to summary judgment on both the Complaint and Counterclaim.  The Court therefore grants State Farm's Motion for Summary Judgment and denies Mr. Elsenbach's Counter Motion for Summary Judgment.

I.      Hawaii Insurance Coverage Law

State law governs the resolution of substantive issues in this diversity action.  Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Snead v. Metro. Prop. & Cas. Ins. Co., 237 F.3d 1080, 1090 (9th Cir. 2001).  When interpreting state law, a federal court is bound by the decisions of a state's highest court.  Ariz. Elec.

Power Coop. v. Berkeley, 59 F.3d 988, 991 (9th Cir. 1995).  In the absence of a governing state decision, a federal court attempts to predict how the highest state court would decide the issue, using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance. Id.; see also Burlington Ins. Co. v. Oceanic Design & Constr., Inc., 383 F.3d 940, 944 (9th Cir. 2004) ("To the extent this case raises issues of first impression, our court, sitting in diversity, must use its best judgment to predict how the Hawaii Supreme Court would decide the issue." (quotation and brackets omitted)).

Insurance policies are subject to the general rules of contract construction.  Dawes v. First Ins. Co. of Haw., Ltd., 883 P.2d 38, 42 (Haw. 1994). Under Hawaii law, construction of a contract, where material facts are undisputed, is a question of law for the court.  See Nat'l Union Fire Ins. Co. v. Reynolds, 889 P.2d 67, 71 (Haw. App. 1995); Cho Mark Oriental Food v. K & K Int'l, 836 P.2d 1057, 1064 (Haw. 1992).  Thus, summary judgment is appropriate when a court determines, as a matter of law, that the terms of an insurance policy do not provide coverage.  See Crawley v. State Farm Mut. Auto. Ins. Co., 979 P.2d 74, 78 (Haw. App. 1999); Foote v. Royal Ins. Co. of Am., 962 P.2d 1004, 1008 (Haw. 1998).

The terms of insurance policies must be interpreted according to their plain, ordinary, and accepted sense in common speech, unless it appears from the

language of the policies that a different meaning is intended.  <u>Nat'l Union</u>, 889

P.2d at 71.  Insurance polices are contracts of adhesion, which must be construed

liberally in favor of the insured, and any ambiguities must be resolved against the

insurer.  <u>Tri-S Corp. v. W. World Ins. Co.</u>, 135 P.3d 82, 98 (Haw. 2006) (citation

omitted).  Additionally, insurance policies must be construed in accord with the

reasonable expectations of a layperson.  <u>Id.</u>

   An "[a]mbiguity exists . . . only when the [policy] taken as a whole, is

reasonably subject to differing interpretation.  Absent an ambiguity, the terms of

the policy should be interpreted according to their plain, ordinary, and accepted

sense in common speech . . . ."  <u>Oahu Transit Services, Inc. v. Northfield Ins. Co.</u>,

112 P.3d 717, 722 n.7 (Haw. 2005) (citation omitted).  When interpreting

insurance policies, courts should look to the entirety of their terms and conditions.

<u>AIG Haw. Ins. Co. v. Estate of Caraang</u>, 851 P.2d 321, 326 (Haw. 1993).

   "'[L]iability insurers have the same rights as individuals to limit their

liability, and to impose whatever conditions they please on their obligation,

provided they are not in contravention of statutory inhibitions or public policy.'"

<u>Liberty Mut. Ins. Co. v. Sentinel Ins. Co., Ltd.</u>, 205 P.3d 596, 614–15 (Haw. App.

2009) (quoting <u>First Ins. Co. of Haw. v. State</u>, 665 P.2d 648, 655 (Haw. 1983)).

The burden is on the insured to establish coverage under an insurance policy.  <u>See</u>

Sentinel Ins. Co. v. First Ins. Co. of Haw., 875 P.2d 894, 909 n.13 (Haw. 1994). The insurer has the burden of establishing the applicability of an exclusion. See id. at 914.

      The duty to indemnify is owed "for any loss or injury which comes within the coverage provisions of the policy, provided it is not removed from coverage by a policy exclusion." Dairy Rd. Partners v. Island Ins. Co. Ltd., 992 P.2d 93, 108 (Haw. 2000). "[T]he obligation of an insurer to defend its insured is separate and distinct from an insurer's obligation to pay a judgment against its insured." First Ins., 665 P.2d at 416–17. An insurer's duty to defend is contractual in nature, and courts "must look to the language of the particular policy involved to determine the scope of that duty." Commerce & Indus. Ins. Co. v. Bank of Haw., 832 P.2d 733, 735 (Haw. 1992) (citation omitted). Under Hawaii insurance law, the duty to defend arises whenever there is a potential for indemnification liability from the insurer to the insured. Hawaiian Holiday Macadamia Nut Co. v. Indust. Indem. Co., 872 P.2d 230, 233 (Haw. 1994); see also Burlington, 383 F.3d at 944. The duty to defend is thus much broader than the duty to indemnify and does not depend on whether liability is ultimately established. Commerce, 832 P.2d at 735. Under the "complaint allegation rule," the duty to defend is determined at the time that the defense is tendered to the insurer or the insurer otherwise is on notice that a

complaint has been filed against its insured.  See, e.g., Dairy Rd. Partners, 992 P.2d at 108–16; Commerce, 832 P.2d at 735; Pancakes of Haw., Inc. v. Pomare Props. Corp., 944 P.2d 83, 88 (Haw. App. 1997).  For the duty to defend to arise, the potential insured need only show that the underlying claim may fall within policy coverage.  Dairy Rd. Partners, 992 P.2d at 108–16 (emphasis added).

Where the pleadings fail to allege any basis for recovery within the coverage of the subject policy, the insurer has no obligation to defend.  Hawaiian Holiday, 872 P.2d at 233.  In determining whether coverage exists under a liability policy, Hawaii courts do not look at the way a litigant states a claim, but rather at the underlying facts alleged in the pleadings.  See Oahu Transit Servs., 112 P.3d at 721; Bayudan v. Tradewind Ins. Co., 957 P.2d 1061, 1069 (Haw. App. 1998).

II.    Coverage

State Farm's primary contention is that the claims in the Underlying Lawsuit do not involve an "occurrence" within the meaning of the Policies.  (Pl.'s MSJ at 15–21.)  State Farm also argues that the intentional act exclusion bars coverage.  (Id. at 22–23.)

The First and Second Homeowners Policies provide coverage for claims made "against an insured for damages because of **bodily injury** or **property damage** . . . caused by an **occurrence**."  (See First Homeowners Policy

at 15.)  The Rental Dwelling Policy provides coverage for claims made "against an insured for damages because of **bodily injury**, **personal injury**, or **property damage** . . . caused by an **occurrence**, and which arises from the ownership, maintenance, or use of the **insured premises**."  (Rental Dwelling Policy at 9.)  The Policies define "occurrence," in pertinent part, as an "accident."[3]  (First Homeowners Policy at 2; Rental Dwelling Policy at 2.)

   The Policies also contain intentional act exclusions.  Specifically, the First and Second Homeowners Policies exclude "**bodily injury** or **property damage**: (1) which is either expected or intended by the **insured**; or (2) which is the result of willful and malicious acts of the **insured**."  (First Homeowners Policy at 16; .)  Similarly, the Rental Dwelling Policy excludes "**bodily injury**, **personal injury**, or **property damage**: (1) which is either expected or intended by an **insured**; or (2) to any person or property which is the result of willful and malicious acts of an **insured**."  (Rental Dwelling Policy at 10.)

---

[3] The First and Second Homeowners Policies define an "occurrence" as "an accident, including exposure to conditions, which results in: (a) **bodily injury**; or (b) **property damage**; during the policy period."  (First Homeowners Policy at 2.) The Rental Dwelling Policy defines an "occurrence" as "an accident, including exposure to conditions, which results in (a) **bodily injury**; (b) **property damage**; or (c) **personal injury**; during the policy period."  (Rental Dwelling Policy at 2.)

In a line of cases concerning various insurance policies, the Hawaii Supreme Court addressed what constitutes an "accident" as opposed to what is "expected or intended by the insured."  In Hawaiian Insurance & Guaranty Co. v. Blanco, 804 P.2d 876, 878 (Haw. 1990), overruled in part on other grounds by Dairy Road Partners, 992 P.2d at 117, the Hawaii Supreme Court was faced with an insurance policy, which similar to the Policies here, defined "occurrence" as "an accident, including exposure to conditions, which results, during the policy period, in: a. bodily injury; or b. property damage."  Blanco, 804 P.2d at 878 (emphases omitted).  Additionally, the policy excluded coverage for bodily injury or property damage "which is expected or intended by the insured[.]"  Id. (emphasis omitted).  In Blanco, Saturnino Blanco ("Blanco") was injured when Ireneo Garcia ("Garcia") shot a rifle in Blanco's direction.  Id. at 877.  Blanco brought a civil action against Garcia, asserting claims for the willful, intentional, and/or negligent firing of a rifle at Blanco and for the negligent infliction of emotional distress on Blanco's wife, who witnessed the shooting.  Id. at 878.  An arbitrator awarded monetary damages against Garcia, and Blanco demanded that Hawaiian Insurance and Guaranty Company, Ltd. ("HIG"), Garcia's homeowners insurer, pay the award.  Id. at 878–79.  HIG refused and brought a separate action seeking a declaration that it owed no duty to defend or indemnify Garcia.  Id. at 879.

The trial court granted summary judgment to HIG.  Id.  On appeal, the Hawaii Supreme Court noted that HIG owed duties under the insurance policy only if injury or damage resulted from an "occurrence."  Id.  The court stated: "Given the best possible interpretation, Garcia fired the rifle in [Blanco's] direction intending to frighten him.  That physical injury might result from such an action is certainly something which a reasonable man in Garcia's position should have anticipated and expected."  Id. at 881.  The Blanco court thus concluded that "with respect to . . . Blanco's bodily injury, there was no accident and therefore no occurrence and, hence, no duty to defend."  Id.  Regarding the mental distress alleged by Blanco's wife, the court stated: "[I]t is clear that a reasonable man in Garcia's position, firing a rifle intentionally in the direction of a woman's husband, would anticipate, and hence expect, that that woman might suffer emotional injury and distress at witnessing the incident."  Id.  The court therefore determined that, with respect to Blanco's wife, "there was no accident and hence no occurrence and, therefore no duty to defend."  Id.  Accordingly, the Hawaii Supreme Court affirmed the trial court's ruling that HIG owed neither a duty to defend nor a duty to indemnify Garcia for the claims asserted by Blanco and his wife.  Id.

In <u>Blanco</u>, the Hawaii Supreme Court tracked its ruling in <u>Hawaiian Insurance & Guaranty Co. v. Brooks</u>, 686 P.2d 23, 24 (Haw. 1984), <u>overruled in part on other grounds by</u> <u>Dairy Road Partners</u>, 992 P.2d at 117.[4]  In <u>Brooks</u>, Robert Carroll ("Carroll") was driving a truck owned by Continental Auto Repair, Inc. ("Continental"), when he offered a ride to Christine Brooks ("Brooks").  <u>Brooks</u>, 686 P.2d at 24.  Brooks got into the rear section of the truck, where she was "assaulted, battered, and raped" by Isaac Bunker ("Bunker"), another passenger in the truck.  <u>Id.</u> at 25.  Brooks sued Carroll, Bunker, and Continental; Continental's insurer, HIG, defended Continental subject to a reservation of rights.  <u>See</u> <u>id.</u>

Meanwhile, HIG filed suit against Continental, Carroll, Bunker, and Brooks, seeking a declaration that HIG owed no duties under the insurance policy, which provided coverage for bodily injury "caused by an occurrence."  <u>Id.</u> at 26.  The policy defined "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."  <u>Id.</u>  The trial court

_____

[4] In <u>Dairy Road Partners</u>, the Hawaii Supreme Court "overrule[d] <u>Brooks</u> and <u>Blanco</u> [only] to the limited extent that they imply that an insurer may rely upon extrinsic facts that may be subject to dispute in the underlying lawsuit as a basis for disclaiming its duty to defend where the complaint in the underlying lawsuit alleges facts within coverage."  <u>Dairy Rd. Partners</u>, 992 P.2d at 117.  The court expressly stated that it did "not intend to call into question the ongoing viability of <u>Brooks</u> and <u>Blanco</u> in any other respect."  <u>Id.</u> at 117 n.2.

entered summary judgment in HIG's favor, and Brooks appealed.  Id. at 25–26.

With respect to Bunker's actions, the Hawaii Supreme Court stated that "the harm

occasioned by his victim was hardly unexpected or unintentional."  Id. at 28.

Regarding Carroll, the court noted that he "could see the incident taking place in

the back of the truck," but "chose not to do anything to prevent or mitigate the

harm suffered by the victim."  Id.  The court therefore concluded that "it was

definitely unreasonable for Carroll to think Continental's automobile liability

policy would protect him from liability to this instance."  Id.  Seeing no potential

for coverage, the Hawaii Supreme Court identified no duty owed by HIG.  Id.; cf.

Estate of Caraang, 851 P.2d at 329 (holding that the shooting death of another

motorist at the hands of the insured's passenger was accidental from the

perspective of the insured because the insured was unaware that the shooting was

taking place, did nothing to facilitate the shooting, and did not know that the

passenger possessed a firearm until after the shooting occurred).

    In Hawaiian Holiday, the Hawaii Supreme Court revisited its

decisions in Blanco and Brooks.  Hawaiian Holiday involved claims that an

insured had "planted fewer trees than the parties had agreed to pursuant to the

contract, purposely planted ungrafted trees and immature seedlings contrary to the

contract, and planted the seedlings and the grass simultaneously, again contrary to

the contract." <u>Hawaiian Holiday</u>, 872 P.2d at 234–35.  The issue before the court

was whether this alleged damage was caused by an "occurrence," which the

applicable insurance policy defined as "an accident, including continuous or

repeated exposure to conditions, which results in bodily injury or property damage

neither expected nor intended from the standpoint of the insured."  <u>Id.</u> at 235.  The

Hawaii Supreme Court relied on its prior decisions, stating: "'The teaching of

<u>Blanco</u> and <u>Brooks</u> . . . is that, in order for the insurer to owe a duty to defend or

indemnify, the injury cannot be the expected or reasonably foreseeable result of the

insured's own intentional acts or omissions.'"  <u>Id.</u> at 234 (quoting <u>Estate of</u>

<u>Caraang</u>, 851 P.2d at 329).  After noting that the plaintiffs' claims "did not sound

in negligence" and were "not accidental," the court concluded that the insured's

actions did not constitute an "occurrence" under the policy at issue.  <u>Id.</u> at 235.

  The Intermediate Court of Appeals of Hawaii applied these principles

in <u>Bayudan</u>.[5]  In that case, Jennifer Lapina ("Lapina") rented a room from

Florencio Bayudan ("Bayudan").  <u>Bayudan</u>, 957 P.2d at 1063.  A couple months

later, Bayudan allegedly "kidnapped and sexually assaulted and/or raped" Lapina.

---

[5] State Farm relies heavily upon <u>Bayudan</u> to support its position that the facts in the Underlying Lawsuit do not constitute an "accident" or "occurrence." (Pl.'s MSJ at 17–19.)  The Court agrees that <u>Bayudan</u> is instructive on the issues present here.  Mr. Elsenbach's attempts to distinguish <u>Bayduan</u> are therefore inapposite.  (<u>See</u> Def.'s CMSJ at 14–15.)

Id.  Bayudan subsequently pleaded no contest to three counts of criminal sexual assault, and thereafter, Lapina filed suit against Bayudan and his wife, asserting claims for intentional and tortious assault and kidnapping, breach of a duty to provide a safe place at the residence, breach of an express or implied warranty that the residence was safe, intentional and/or negligent failure to warn Lapina of Bayudan's pattern of kidnapping and assault, and intentional and/or negligent infliction of emotional distress.  Id. at 1063, 1067–68.

After Bayudan's homeowners insurer, Tradewind Insurance Company, Ltd. ("Tradewind"), notified him that it would not provide a defense for Lapina's lawsuit, Bayudan filed a declaratory relief action against Tradewind.  Id. at 1063.  Similar to the Policies here, the insurance policy at issue in Bayudan defined an "occurrence" as "'an accident, including exposure to conditions, which results, during the policy period,' in 'bodily injury' or 'property damage.'"  Id. (emphasis omitted).  Also like the Policies here, the Bayudan policy contained an exclusion for "bodily injury or property damage: a. which is expected or intended by the insured . . . ."  Id. at 1064.  Tradewind moved for summary judgment on the basis that the claims in Lapina's lawsuit did not arise from an "occurrence" as defined by the insurance policy, but instead, that Lapina's injuries were "expected or intended by the insured," and thus excluded from coverage under the policy.  Id.

The trial court granted summary judgment in favor of Tradewind as to this argument, and the Intermediate Court of Appeals of Hawaii affirmed.[6] Id. at 1064, 1067–70.  The appellate court concluded, and Bayudan admitted, that Lapina's first count for assault and kidnapping was based on an intentional act and did not fall within the policy's definition of an occurrence.  Id. at 1067.  As to Lapina's remaining claims—including her claims for intentional and/or negligent failure to warn and intentional and/or negligent infliction of emotional distress—the court concluded that merely recasting the facts relevant to the kidnapping and assault claim did not raise a potential for coverage.  Id. at 1067–70.  Accordingly, Tradewind did not have a duty to defend or indemnify Bayudan for Lapina's claims in the underlying lawsuit.  Id.

The foregoing cases establish that, under Hawaii law, "in order for the insurer to owe a duty to defend or indemnify, the injury cannot be the expected or reasonably foreseeable result of the insured's own intentional acts or omissions.'"  See Hawaiian Holiday, 872 P.2d at 234 (quoting Estate of Caraang, 851 P.2d at 329); see also Burlington, 383 F.3d at 948 (applying Hawaiian Holiday's definition

---

[6] The appellate court reversed the trial court's determination to the extent that the trial court refused to allow Bayudan to supplement the record with Lapina's amended complaint, which for the first time, asserted a slip and fall claim.  Bayudan, 957 P.2d at 1075.

of "accident" to determine whether an "occurrence" had taken place); <u>Blanco</u>, 804 P.2d at 881. Additionally, "[t]he question of what is an 'accident' must be determined by addressing the question from the viewpoint of the insured." <u>Hawaiian Holiday</u>, 872 P.2d at 234. The issues before the Court are therefore whether the claims against Mr. Elsenbach involve alleged acts that were intentional and, if so, whether Ms. Elsenbach's alleged injury and emotional distress were expected or reasonably foreseeable.

Examining the facts of the Underlying Complaint, as the Court must, <u>Oahu Transit Servs.</u>, 112 P.3d at 721; <u>Bayudan</u>, 957 P.2d at 1069, the Court can only conclude that there was no "accident"; to the contrary, the Underlying Complaint alleges solely intentional conduct on the part of Mr. Elsenbach. Indeed, Ms. Elsenbach alleges that Mr. Elsenbach harassed and verbally and physically abused her (Pl.'s CSOF Ex. 2 ¶¶ 7–8), and that this harassment and abuse culminated in a May 28, 2007 incident, during which Mr. Elsenbach purportedly "grabb[ed] [Ms. Elsenbach's] jaws and head, and violently twist[ed] her head and neck" (<u>id.</u> ¶¶ 8, 12–14). Ms. Elsenbach also contends that Mr. Elsenbach and Beverly conspired to, and did in fact, "harass, stalk, threaten, terrorize, and intimidate" Ms. Elsenbach and her witnesses in the divorce case. (<u>Id.</u> ¶¶ 15–18.) Finally, Ms. Elsenbach asserts that Mr. Elsenbach and Beverly attempted to kill her

by running her car off the road and that they trespassed and burglarized her residence.  (Id. ¶¶ 19, 21.)  Even if, as Mr. Elsenbach asserts, he did not intend to harm Ms. Elsenbach, Ms. Elsenbach's alleged injuries and emotional distress are nonetheless the foreseeable result of Mr. Elsenbach's purported harassment and verbal and physical abuse, and therefore are not covered under the Policies.

Mr. Elsenbach relies on paragraph 14 of Ms. Elsenbach's complaint to assert that his actions constitute a covered "occurrence."  (Def.'s CMSJ at 9–10, 13–14.)  Paragraph 14 provides as follows: "On or about May 28, 2007, [Mr.] Elsenbach knowingly, intentionally, recklessly, and/or negligently inflicted severe emotional distress upon [Ms. Elsenbach] by grabbing her jaws and head, and violently twisting her head and neck."  (Pl.'s CSOF Ex. 1 ¶ 14 (emphasis added).)  According to Mr. Elsenbach, use of the term negligently in this allegation contemplates "the possibility that a jury will find the alleged injury caused by [Mr. Elsenbach] to have been accidental in nature."  (Def.'s CMSJ at 9.)  Mr. Elsenbach therefore concludes: "[T]he allegation that by grabbing [Ms. Elsenbach], [Mr. Elsenbach] unintentionally caused her injury in the form of severe emotional distress, is an allegation of bodily injury caused by an occurrence certainly entitling [Mr. Elsenbach] to defense under the Rental Dwelling Policy and likely also entitled him to defense under the Second Homeowners Policy."  (Id. at 9–10.)

The Court is not persuaded. In her complaint, Ms. Elsenbach asserts multiple claims predicated upon the May 28, 2007 incident. Specifically, Ms. Elsenbach contends that by "grabbing her jaws and head, and violently twisting her head and neck" during that incident, Mr. Elsenbach attempted to kill her; assaulted and battered her; and knowingly, intentionally, recklessly, and/or negligently inflicted severe emotional distress upon her. (Pl.'s CSOF Ex. 1 ¶¶ 12–14.) Each of these claims are explicitly premised upon Mr. Elsenbach's purported act of "grabbing [Ms. Elsenbach's] jaws and head, and violently twisting her head and neck." (See id.) As in Blanco, because a reasonable person would expect that such purported abuse would result in emotional distress, Mr. Elsenbach's alleged abuse of Ms. Elsenbach during the May 28, 2007 incident, and Ms. Elsenbach's emotional distress resulting therefrom, do not constitute an "accident" or "occurrence" within the meaning of the Policies, but rather are the "expected or intended result" of Mr. Elsenbach's alleged actions. See Blanco, 804 P.2d at 881 (concluding that there was no "accident" and hence no "occurrence" with regard to a wife's negligent infliction of emotional distress claim because "a reasonable man in [the insured's] position, firing a rifle intentionally in the direction of a woman's husband, would anticipate, and hence expect, that that woman might suffer emotional injury and distress at witnessing the incident"). Moreover, as in

Bayudan, recasting the same facts under different legal theories, as the Underlying Complaint does here (see Pl.'s CSOF Ex. 1 ¶¶ 12–14), does not raise the potential for coverage. See Bayudan, 957 P.2d at 1067–70 (determining that an insurer had no duty to defend against several claims alleging negligence when the claims merely recast the facts related to alleged kidnapping and assault claims).

"The Hawaii Supreme Court has [also] . . . cautioned of the need to examine carefully a complaint to 'ensure that plaintiffs c[an]not, through artful pleading, bootstrap the availability of insurance coverage under an insured defendant's policy by purporting to state a claim for negligence based on facts that, in reality, reflect[] manifestly intentional, rather than negligent conduct.'" Burlington, 282 F.3d at 948 (quoting Dairy Rd. Partners, 992 P.2d at 112). There is no doubt here that Ms. Elsenbach's alleged emotional distress resulted from Mr. Elsenbach's intentional conduct. Accordingly, Ms. Elsenbach's use of the term negligently in her complaint does not convert otherwise intentional conduct into an "accident" or "occurrence."

Mr. Elsenbach next relies upon extrinsic evidence to demonstrate that "[he] did not intend to injure [Ms. Elsenbach]," such that the claims in the Underlying Lawsuit would constitute an insurable "occurrence." (Def.'s CMSJ at 11–13.) First, Mr. Elsenbach submitted a copy of the criminal complaint against

him for abuse of family or household member, filed May 31, 2007, (Def.'s CSOF Ex. C) as well as the May 27, 2008 order dismissing the criminal complaint with prejudice (id. Ex. D). That the criminal charges stemming from the May 28, 2007 incident were dismissed does not affect this Court's analysis. See Allstate Ins. Co. v. Kim, 121 F. Supp. 2d 1301, 1305–06 (D. Haw. 2000) (concluding that although the insured was acquitted of the criminal charges that gave rise to the civil lawsuit, the insurer nonetheless had no duty to defend or indemnify the insured for the claims in the civil suit because they were intentional and criminal in nature and therefore were excluded from coverage under the policies at issue). Mr. Elsenbach's assertion that he "adamantly denied" the criminal charges also does not raise a potential for coverage. See Bayudan, 957 P.2d at 1072 (stating that the insured's contention that he did not kidnap and rape the alleged victim did not bring the victim's claims in the underlying lawsuit within scope of coverage).

Next, Mr. Elsenbach submitted a declaration authored by his divorce lawyer, which states that the judge in the divorce proceeding found that Ms. Elsenbach failed to meet her burden to show that the marriage was terminated as a result of serious physical abuse. (Def.'s CSOF, Declaration of Ira Leitel, Esq. ("Leitel Decl.") ¶ 11.) Such a determination would have entitled Ms. Elsenbach to greater benefits under the Elsenbach's prenuptial agreement. (Id. ¶ 10.) It is

unclear to the Court why this determination by the divorce court would entitle Mr. Elsenbach to coverage in the Underlying Lawsuit.  The parties here are not concerned with why the marriage was terminated, and the divorce court's determination does not implicate the potential for coverage.  As with the dismissal of the criminal charges against Mr. Elsenbach, the divorce court's determination simply does not affect this Court's conclusion.  See Kim, 121 F. Supp. 2d at 1305–06; Bayudan, 957 P.2d at 1072.  Accordingly, State Farm does not have a duty to defend or indemnify Mr. Elsenbach under the Policies on this basis.

Finally, Mr. Elsenbach's reliance on State Farm Fire & Casualty Co. v. Poomaihealani, 667 F. Supp. 705 (D. Haw. 1987) is inapposite.  In that case, the insured's neighbor "crossed into [the insured's] yard, bumped him, pointed, shook her hand in his face, and began yelling at him."  Poomaihealani, 667 F. Supp. at 706.  The insured did not initiate this confrontation, and tried repeatedly to extricate himself.  Id.  Eventually, however, the insured slapped and pushed the neighbor, claiming that he did so in self-defense.  Id.  Under these circumstances, and predicting Hawaii law, the Poomaihealani court determined that the insured was not excluded from coverage under the homeowners insurance policy at issue because there was a genuine question as to whether the insured was acting in self-defense.  Id. at 709 ("[T]he justification for inferring intent is not necessarily

applicable in cases of self-defense.").  The instant case is distinguishable from

Poomaihealani because here there is a complete absence of facts to demonstrate

that Mr. Elsenbach was, at any time, acting in self-defense.  The Poomaihealani

court's reasoning therefore does not apply to the case at hand.[7]

In sum, relying on the facts alleged in the Underlying Complaint, and

interpreting the Policies' plain and unambiguous terms, the Court determines that

none of Ms. Elsenbach's claims against Mr. Elsenbach in the Underlying Lawsuit

---

[7] In his Reply, Mr. Elsenbach relies on two recent unpublished decisions
from the District of Hawaii—RLI Insurance Co. v. Thompson, 2010 WL 1438925
(D. Haw. Apr. 12, 2010) and State Farm Fire & Casualty Co. v. Thompson, 2010
WL 2017101 (D. Haw. May 20, 2010)—for the proposition that "where even a
vague claim for negligence is asserted, an insurer cannot prevail on a motion for
summary judgment unless the insurer is able to establish that it is impossible for a
claim in the Underlying Action to be covered by the Policy."  (Def.'s Reply at
2–4.)  These related cases involved negligence claims for failure to disclose certain
problems in a home.  Because it was unclear whether the alleged negligence
exacerbated prior damage, such that it would constitute accidental conduct causing
property damage, the RLI and State Farm courts denied summary judgment as to
the insurers' arguments that they owed no duty to defend or indemnify the
negligence claims.  See RLI, 2010 WL 1438925, at *9; State Farm, 2010 WL
2017101, at *8–*10.  Conversely, here, the only alleged negligence is Ms.
Elsenbach's claim that by "grabbing her jaws and head, and violently twisting her
head and neck" during the May 28, 2007 incident, Mr. Elsenbach negligently
inflicted severe emotional distress upon her.  (Pl.'s CSOF Ex. 1 ¶ 14.)  As noted,
because a reasonable person would conclude that engaging in the alleged abuse
would result in emotional distress to the victim, there is no coverage under the
Policies for Ms. Elsenbach's purported negligence claim.  This case therefore more
closely resembles the line of cases beginning with Brooks and Blanco, rather than
RLI and State Farm.  RLI and State Farm are both distinguishable from the instant
action, and the Court is not persuaded that their reasoning applies herein.

arise from an "accident" or "occurrence," but rather, are the expected or intended consequences of Mr. Elsenbach's alleged intentional acts.  See <u>Blanco</u>, 804 P.2d at 881; <u>Bayudan</u>, 957 P.2d at 1067–70.  Accordingly, there is no coverage under the Policies, and the Court concludes that State Farm owes no duties to Mr. Elsenbach under these Policies.[8]

CONCLUSION

For the reasons stated above, the Court GRANTS State Farm's Motion for Summary Judgment (Doc. # 24) and DENIES Mr. Elsenbach's Counter

---

[8] State Farm also asserts that the injury to the insured exclusion bars coverage under the First Homeowners Policy.  (Pl.'s MSJ at 24.)  Mr. Elsenbach all but conceded this point both in his briefing (Def.'s CMSJ at 6 n.2) and at the hearing on this matter.  The Court need not reach this issue, however, because of its determination that State Farm owes no duties to Mr. Elsenbach under any of the three policies.  Additionally, State Farm contends that the claims in the Underlying Lawsuit do not arise out of ownership, maintenance, or use of the insured premises as required for coverage under the Rental Dwelling Policy.  (Pl.'s MSJ at 21–22; Pl.'s Reply at 12.)  The totality of Mr. Elsenbach's argument on this point, as articulated at the hearing on this matter, is that the Rental Dwelling Policy is a potential source of insurance coverage because the alleged incidents happened in the insured premises.  Once again, the Court need not resolve this issue.  Finally, the Court does not consider the parties' arguments concerning whether the Policies include coverage for punitive damages (Pl.'s MSJ at 24; Pl.'s Reply at 13) and whether the Underlying Lawsuit alleges insurable bodily injury under the terms of the Rental Dwelling Policy and the Second Homeowners Policy (Def.'s CMSJ at 7–8).

Motion for Summary Judgment (Doc. # 31).  The Clerk of the Court is hereby

directed to enter judgment in favor of State Farm.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, June 30, 2011.



_____
David Alan Ezra
United States District Judge

State Farm Fire & Casualty Co. v. Elsenbach et al., Cv. No. 09-00541 DAE-BMK;
ORDER: (1) GRANTING STATE FARM'S MOTION FOR SUMMARY
JUDGMENT; (2) DENYING MR. ELSENBACH'S COUNTER MOTION FOR
SUMMARY JUDGMENT